**STERLING DRUG INC., Appellant,**

v.

**FEDERAL TRADE COMMISSION et al.**

**No. 24878.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 1, 1971.

Decided Sept. 22, 1971.

As Amended Sept. 27, 1971.

Bazelon, Chief Judge, concurred in part and dissented in part and filed opinion.

Mr. Lionel Kestenbaum, Washington, D. C., with whom Messrs. Herbert A. Bergson and Murray J. Belman, Washington, D. C., were on the brief, for appellant.

Mr. Robert V. Zener, Atty., Department of Justice, with whom Mr. Thomas A. Flannery, U. S. Atty., was on the brief, for appellees. Messrs. Harold D. Rhynedance, Jr., Alvin L. Berman, and Robert E. Duncan, Attys., Federal Trade Commission, also entered appearances for appellees.

Messrs. Jerrold G. Van Cise, New York City, and Donald J. Mulvihill, Washington, D. C., filed a brief on behalf of Miles Laboratories, Inc., as amicus curiae urging affirmance.

Before BAZELON, Chief Judge, and TAMM and WILKEY, Circuit Judges.

TAMM, Circuit Judge:

In a case now in progress before the Federal Trade Commission (hereinafter "the Commission"), Sterling Drug, Inc. (hereinafter "Sterling") has been

charged with a violation of section 7 of the Clayton Act, 15 U.S.C. § 18 (1964), in connection with its acquisition of Lehn & Fink Products Corporation (hereinafter "Lehn & Fink"). In the course of the proceeding the Commission denied Sterling's request for certain documents which it felt were essential to the presentation of its case. On this appeal Sterling seeks reversal of a District Court decision upholding that order. It claims that the documents are subject to disclosure under the Freedom of Information Act, 5 U.S.C. § 552 (Supp. IV 1969), and, in the alternative, that it will be denied the full and fair hearing required by the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (1964) if it is not granted access to the documents.

## I. *History of the Case*

Sterling manufactures, distributes and sells drug products, household consumer products, and cosmetics throughout the United States. (J.A. 41). In 1966 Sterling acquired Lehn & Fink, whose primary products are "Lysol" brand disinfectants and deodorizers. Lehn & Fink also produces health and beauty aids, acne aids, and external antiseptics, among other products.

On April 12, 1968, the Commission served upon Sterling a complaint alleging that its acquisition of Lehn & Fink violated section 7 of the Clayton Act, 15 U.S.C. § 18 (1964). The complaint charged that the acquisition would have an adverse competitive effect in the markets for household liquids and aerosol disinfectants and deodorizers. There were no allegations of anticompetitive consequences in other fields.

Shortly after the complaint against Sterling was issued, another case involving a diversified drug company came before the Commission. This was the proposed acquisition of S.O.S. Company (hereinafter "S.O.S.") by Miles Labora-

tories, Inc. (hereinafter "Miles"), a direct competitor of Sterling. General Foods Corporation (hereinafter "General Foods") had originally acquired S.O.S., but it had been ordered to divest itself of the company in an earlier proceeding [1] and on July 8, 1968, filed with the Commission an application for approval of Miles as the purchaser. Three days later the Commission approved the divestiture plan, stating that it had "entirely relied upon the information submitted by General Foods and its approval [was] conditioned upon this information being accurate and complete." (J.A. 8.) On September 27, 1968, the Commission received notice that the merger had been consummated.

In the course of these proceedings Miles twice wrote the Commission requesting that certain documents which it and General Foods had submitted in support of the Miles-S.O.S. merger be considered confidential. Then, on October 25, 1968, General Foods, acting for itself and Miles, formally requested confidential treatment of these documents. The documents were resubmitted as part of the General Foods Final Compliance Report, and on November 29, 1968, the Commission notified General Foods that they would be classified confidential.

Believing that the Miles-S.O.S. merger was very similar to its merger with Lehn & Fink and that the Commission's approval of the former merger was therefore dispositive of the case against it, Sterling petitioned the Commission to close the file on the proposed complaint issued to it and requested a hearing on this petition. On December 2, 1968, the Commission notified Sterling that both its petition to close the file and its request for a hearing were denied.

The Commission eventually issued a formal complaint against Sterling on August 7, 1969. This complaint charged that the Sterling-Lehn & Fink merger would have anti-competitive effects in

1. General Foods Corp., 68 F.T.C. 581 (Dkt., 8600 1966), aff'd *sub nom.* General Foods Corp. v. FTC, 386 F.2d 936 (3d Cir. 1967), cert. den., 391 U.S. 919, 88 S.Ct. 1805, 20 L.Ed.2d 657 (1968).

three product lines in addition to the one specified in the proposed complaint— household deodorizers. The three additional product lines were health and beauty aids, proprietary drugs and personal care products, and acne aids and external antiseptics.

In its answer to this complaint Sterling asserted two affirmative defenses. It first reiterated its contention that the Commission's approval of the Miles-S.O.S. merger demonstrated that its acquisition of Lehn & Fink did not violate the Clayton Act. Second, it charged that the Commission's issuance of the formal complaint was:

> arbitrary and capricious and a denial of due process of law because the drastic revisions and change in theory from the proposed complaint constituted a deliberate attempt to avoid the consequences of the *Miles-S.O.S.* determination, and to accord diametrically opposing treatment to substantially identical transactions.

(Brief for Appellant at 9.)

To obtain information regarding these defenses, Sterling moved for production and disclosure of the following documents in the Commission's files:

1. All documents submitted to the Commission by General Foods and others concerning the sale of S.O.S. to Miles which were not in the public record.

2. All documents prepared by the Commission or its employees giving findings or reasons for its approval of the Miles-S.O.S. merger or otherwise commenting on this merger.

3. All documents prepared by the Commission or its employees comparing the two mergers.

4. All documents prepared by the Commission or its employees "re-

flecting the Commission's reasons for (a) limiting its original proposed complaint to the grounds asserted therein or (b) changing the grounds for challenging the subject acquisition from those asserted in its original proposed complaint to those contained in the present complaint."

Sterling's request for these documents was based on the Commission's rules and the Freedom of Information Act.

The Hearing Examiner struck Sterling's affirmative defenses and denied its request for production of documents on the ground that the defenses to which these documents related were no longer in the case. Although he noted that a claim had been made under the Freedom of Information Act, he did not rule upon this claim.

■ Sterling applied to the Commission for leave to appeal these actions on the part of the Examiner, but this application was denied. In its opinion the Commission said:

> The hearing examiner is responsible for framing the issues to be tried and permitting discovery based upon those issues. At present, the examiner is in the process of defining and delineating the issues prior to discovery. By striking respondent's "affirmative defenses" as separate issues, the examiner has not eliminated the substance of those alleged defenses from the hearing. Nothing in the examiner's ruling has foreclosed respondent from arguing any point he wishes to raise concerning the Commission's action in approving Miles Laboratories' acquisition of S.O.S.

(Brief for Appellees at 6.) Like the Hearing Examiner, the Commission did not pass on Sterling's claim under the Freedom of Information Act.[2]

---

2. Sterling charges that this failure was a violation of section 5(e) of the Administrative Procedure Act, 5 U.S.C. § 555 (e) (1964), which provides:
   Prompt notice shall be given of the denial in whole or in part of a written

application, petition, or other request of an interested person made in connection with any agency proceeding. Except in affirming a prior denial or when the denial is self-explanatory, the notice shall be accompanied by a brief

Sterling then requested that the Hearing Examiner include in the contested issues of law and fact a number of issues exploring the similarities between the Miles-S.O.S. and Sterling-Lehn & Fink mergers and also requested admissions from the Commission relating to these issues. The Examiner denied both requests, and the Commission once again denied Sterling permission to appeal his decision. Its rationale was as follows:

> The issue in this proceeding is whether [Sterling] has violated Section 7 of the Clayton Act, as amended, not the degree, if any, to which the facts here resemble the facts in the *Miles-S.O.S.* acquisition. [Sterling], therefore, is not entitled to discovery pertaining to the Commission's records or actions in that matter.

(J.A. 39.)

On July 7, 1970, Sterling filed a complaint in the District Court in which it sought to enjoin the Commission from withholding the documents described above. In its complaint Sterling contended that the Commission's apparent conclusion that the Miles-S.O.S. decision was not particularly relevant to its case and its consequent refusal to disclose documents related to that earlier decision would necessarily deny Sterling a fair hearing. It also charged that production of the documents was required under the *Freedom of Information Act.* The Commission filed a motion to dismiss the complaint, or, in the alternative, for summary judgment, and Miles moved to intervene as a defendant.

The District Court judge did not pass on Miles' motion to intervene. On the merits of the case he first concluded, on the basis of his *in camera* inspection of the documents in question, that they were exempt from disclosure under the Freedom of Information Act. Next, he held that the issue of denial of a fair

hearing was not properly before the court because Sterling had failed to exhaust its administrative remedies with regard to this issue. As a result of these rulings, he granted the Commission's motion for summary judgment. This appeal followed.

## II. *Sterling's Claim Under the Freedom of Information Act*

■ The Freedom of Information Act was intended "to increase the citizen's access to government records." Bristol-Myers Co. v. FTC, 138 U.S.App.D.C. 22, 25, 424 F.2d 935, 938, cert. den., 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). Under the Act federal agencies are required upon proper request to make available to "any person" identifiable records not specifically exempt, 5 U.S.C. § 552(a) (3) (Supp. IV 1969). To insure that the disclosure requirements are liberally construed, Congress provided for de novo review in the District Court whenever an agency fails to produce documents, with the agency having the burden of proving that the documents are exempt.

The Commission contends that two exemptions to the disclosure requirements of § 552(a) (3) are applicable in this case. The first of these is the exemption for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b) (5) (Supp. IV 1969). According to the Commission, its memoranda containing analyses and recommendations with regard to the *Miles-S.O.S.* and *Sterling-Lehn & Fink* cases fall within this exemption. The District Court agreed with the Commission, concluding as follows:

> [These documents] are not "purely factual reports and scientific studies" (Bristol-Myers Company v. Federal

statement of the grounds for denial. Although we feel the Commission should have stated its reasons for denying Sterling's request, it does appear that the reasons for denial were fairly obvious and that Sterling has suffered no

hardship by virtue of the Commission's failure in this regard. It would therefore serve no useful purpose to remand the case to the Commission for a statement of the reasons for its denial.

Trade Commission, 138 U.S.App.D.C. 22, 26, 424 F.2d 935, 939 (1970)), but are in fact " 'those internal working papers in which opinions are expressed and policies formulated and recommended.' " *Bristol-Myers, supra,* citing Ackerly v. Ley, 137 U.S.App.D.C. 133, 138, 420 F.2d 1336, 1341 (1969). (J.A. 77.)

■■ Sterling attacks the decision below on several grounds. To begin with, it alleges that the District Court judge did not follow the proper procedures for passing on a claim under the Freedom of Information Act. Citing our decisions in *Bristol-Myers, supra,* and Grumman Aircraft Engineering Corp. v. Renegotiation Bd., 138 U.S.App.D.C. 147, 425 F.2d 578 (1970), Sterling contends that the District Court judge failed to take the required steps of stating his reasons for concluding that an exemption applied to the documents in question and of considering whether disclosure of the documents would be proper if certain deletions were made. With regard to the first contention, we feel that the judge's statement that the documents in question were "internal working papers in which opinions are expressed and policies formulated and recommended" clearly indicates the basis for his decision. We must agree, however, that there is no indication in the opinion below that the judge considered the possibility of deleting portions of the documents. It may well be that making de-

letions would not change the character of these documents, since they appear to consist primarily of the thoughts and recommendations of the Commission and its staff. However, there may be appendices or statements of facts which are clearly subject to disclosure. *See* Soucie v. David, 145 U.S.App.D.C. —— at ——, 448 F.2d 1067 at 1078 (1971). We must therefore remand the case so that the District Court judge can consider this possibility and state in his opinion that he has done so.

■■ Sterling's next contention relates to that portion of § 552(b) (5) which states that the exemption is applicable only to those internal memoranda "not * * * available by law to a party other than an agency." Sterling interprets this language as meaning that it is entitled to inspect the Commission memoranda under the Act if it has the right to discover these documents in its present suit against the Commission, but we believe this interpretation to be incorrect.[3] The language in question is admittedly somewhat difficult to interpret because many documents cannot in the abstract be said to be either available "by law" or unavailable "by law"; their discoverability is dependent upon the showing of need made by the litigant. Davis, The Information Act: A Preliminary Analysis, 34 U.Chi.L.Rev. 761, 795 (1967). However, Congress' description of those entitled to disclosure under the Act[4] and earlier cases decided by this

---

3. The documents might well be exempt even under Sterling's interpretation of the statute, for there is considerable doubt that Sterling is entitled to discovery of the documents in its current case against the Commission. We will discuss this issue in the third portion of our opinion.

4. But when a memorandum or letter would be subject to discovery by a party whose need for it is strong but not by a party whose need for it is weak, should the agency disclose it, refuse disclosure, or apply discovery law to the facts about the particular applicant? The last course seems desirable, but the Act seems to forbid that course, for it

requires disclosure to "any person" and it replaces the statutory words "persons properly, and directly concerned."[90] The

90. The Senate committee said the bill "eliminates the test of who shall have the right to different information." Sen.Rep. 5. The House committee emphasized the same thought. House Rep. 8.

applicant's need cannot be the test. The agency cannot say that one person is "any person" but that another person is not.

But since the purpose of the exemptions is to cut down the requirement of disclosure to "any person," the purpose of the fifth exemption could be to whittle down the "any person" require-

court[5] clearly indicate that disclosure under the Act is not to depend upon the needs of a particular litigant. The correct test for determining which documents are not exempt under § 552(b) (5) is given in the House Committee's report on the section, which states that "any internal memorandums which would routinely be disclosed to a private party through the discovery process in litigation with the agency would be available to the general public." H.R.Rep.No. 1497, 89th Cong., 2d Sess. 10 (1966), U.S.Code Congressional & Admin.News, p. 2428. The question for decision is thus whether " 'a private party'—not necessarily the applicant—would routinely be entitled to [the Commission memoranda] through discovery." *Davis, supra,* 796. The clear answer is that he would not be so entitled. While some cases suggest that government memoranda containing legal analyses and recommendations may in some circumstances be subject to discovery,[6] it is beyond question that granting discovery of such documents is a very extraordinary step, not a routine one. Accordingly, we conclude that the Commission memoranda in question here are the type which should be exempt under § 552(b) (5).

This conclusion would seem to resolve the matter, but Sterling makes a further argument for the proposition that many if not all of the Commission memoranda it seeks must be disclosed even though they would normally be exempt under § 552(b) (5). As we noted earlier, the Commission did not issue an opinion giving the reasons for the *Miles-S.O.S.* decision, and Sterling believes that these reasons must of necessity be contained in the documents it seeks and that these documents must be disclosed "in order to provide access to the basis for the agency decision and its rationale." (Brief for Appellant at 23.) In support of this line of reasoning, Sterling cites our opinion in American Mail Line, Ltd. v. Gulick, 133 U.S.App.D.C. 382, 411 F.2d 696 (1968).

In *Gulick* the only document involved was a memorandum which the Maritime Subsidy Board of the Department of Commerce had clearly incorporated into one of its decisions, stating that its decision was based on the memorandum and setting forth the last five pages of the memorandum as its own findings and conclusions. We held that in those circumstances the memorandum was not an intra-agency memorandum exempt under § 552(b) (5) but a portion of an agency order specifically subject to disclosure under § 552(a) (2) (A), which requires federal agencies to disclose to any person upon request all "final opinions, * * as well as orders, made in the adjudication of cases." Our reasoning was as follows:

> If the Maritime Subsidy Board did not want to expose its staff's memorandum to public scrutiny it should not have stated publicly in its April 11 ruling that its action was based upon that memorandum, giving no other reasons or basis for its action. When it chose this course of action "as a matter of convenience" (Brief for Appellee at 9) the memorandum lost its intra-agency status and became a public record, one which must be disclosed to appellants. Thus, we conclude that the Board's April 11 ruling clearly falls within the

ment so that, in effect, only a person with a strong enough interest is entitled to disclosure of a memorandum or letter. This idea makes practical sense, but it is contrary to the words of the fifth exemption. The key words are "a private party." The words are not "the applicant" or "the party requesting disclosure." The focus is not on the applicant but on an abstract person, "a private party."

Davis, *supra,* at 795–796.

5. Soucie v. David, *supra*; Grumman Aircraft Engineering Corp. v. Renegotiation Bd., *supra.*

6. *See* Carl Zeiss Stiftung v. Carl Zeiss Jena, 40 F.R.D. 318 (D.D.C.1966); Lykes Corp. and Lykes Bros. Steamship Co., 185 Ct.Cl. 792 (1968); Weiss v. United States, 180 Ct.Cl. 863 (1967).

confines of 5 U.S.C. § 552(a) (2) (A) and consequently it must be produced for public inspection.

(133 U.S.App.D.C. at 389, 411 F.2d at 703.)

In discussing the applicability of *Gulick* to the case at hand, we feel it is necessary to divide the Commission memoranda into three categories—those prepared by the Commission staff, those prepared by individual members of the Commission, and those prepared, or at least issued, by the Commission itself.[7] With regard to the first category, we do not believe *Gulick* supports appellant's position. Here the Commission has not indicated publicly that staff memoranda contained the rationale for this decision,[8] and we do not agree with Sterling's assertion that this must of necessity be the case. To begin with, most of these memoranda were written after the Commission's decision in Miles-S.O.S. and were directed toward the litigation in the Sterling-Lehn & Fink case. While these later memoranda contain analyses of the earlier decision, many of these analyses might well be based only on the staff's speculations as to the reasons underlying the decision and not on the reasons which actually motivated the Commission. Even if the Commission furnished its staff with a statement of its reasons for the Miles-S.O.S. decision, the staff memoranda might still be misleading and incomplete, for in them the staff was not attempting to state these reasons in the abstract, but was applying them to Sterling's acquisition of Lehn & Fink. Instead of granting the public

access to documents of such questionable validity, it would seem more logical to allow inspection of the memorandum from the Commission disclosing the grounds for its decision, assuming for the moment that such a memorandum exists. We will, of course discuss this subject further below.

The staff memoranda submitted to the Commission prior to the Miles-S.O.S. decision undoubtedly contain ideas which affected that decision to some extent. However, our experience with the decision-making process leads us to believe that the material in these memoranda was probably filtered and refined by the Commission, with the result that its ultimate decision was something more than, or at least different from, the sum of its "parts." Consequently, we doubt that examination of the "parts" would give a very accurate picture of the decision.

■ On the negative side, disclosure of documents such as the staff memoranda at issue here might well have a detrimental effect on an agency's decision-making process. Congress' primary purpose in drafting § 552(b) (5) was to insure that federal agencies continued to enjoy the free flow of ideas essential to the making of reasoned decisions. Thus, the House Committee Report on the section states:

> [A] full and frank exchange of opinions would be impossible if all internal communications were made public. [Agency witnesses] contended, and with merit, that advice from staff assistants and the exchange of ideas

7. Although the dissenting opinion herein characterizes our classification of the material involved as an "artificial division" of this material, it simultaneously accepts our third division as "consistent with the act." We cannot accept the dissent as to the first two categories as logical, reasoned or correct. The rationale of this division, which refutes the idea of artificiality, is that categories one and two are not *policy* unless adopted by the Commission. If the memoranda classified as categories one and two are adopted by the Commission, then they might be required to be produced,

because the adoption does make them policy and they then fall within the productive category. This was precisely the rationale of *Gulick*, on which we of the majority rely. As we read the dissenting opinion's footnote 8 it is consistent with our opinion since we are doing precisely what the last two sentences of dissenting footnote 8 say is the correct rationale.

8. In note 11, *infra*, we deal with the possibility that the Commission made such an indication in the inter-agency memoranda which it issued.

among agency personnel would not be completely frank if they were forced "to operate in fishbowl."

H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966) U.S.Code Congressional and Administrative News, p. 2427. Authorizing disclosure of the staff memoranda would appear to run counter to this Congressional expression of policy. Sterling contends this is not the case, however. Its theory is that disclosure is only warranted in this case because the Commission did not issue an opinion giving the reason for its *Miles-S.O.S.* decision and that requiring disclosure in this case and others like it will have the salutary effect of requiring agencies to issue an opinion with every order. Although persuasive in the abstract, this reasoning is unrealistic when applied to the everyday world of overburdened administrative agencies.[9] Agencies are required to issue opinions with many of their orders,[10] but it is completely unreasonable to suppose that every agency order can be accompanied by an opinion. The probable effect of a decision requiring disclosure of the staff memoranda would thus be to inhibit "a full and frank exchange of opinions" at least in that class of cases where opinions are not, and as practical matter cannot be, issued. We decline to make such a decision. Accordingly, we hold that the staff memoranda are not subject to disclosure under *Gulick*.[11]

We also feel that *Gulick* does not compel disclosure of the two memoranda written by individual Commissioners. Although the Commissioners were obviously parties to the *Miles-S.O.S.* decision and probably discussed the grounds for that decision to some extent in their memoranda, these memoranda do not necessarily contain a full and accurate account of the grounds for the decision. The Commissioners may have intended to give only a brief summary of Miles-S.O.S. in their memoranda. Moreover, since different Commissioners may have approved the merger for different reasons, the two memoranda at issue may provide only the individual Commissioner's reasons for approving the decision, not the reasons of the Commission as a whole. Finally, both memoranda contain comparisons of the Miles-S.O.S. and Sterling-Lehn & Fink cases, and it may well be that in making their comparisons the Commissioners emphasized certain principles underlying the earlier decision while neglecting others. In sum, then, we believe it is questionable

---

9. The Social Security Administration issues more than four million orders a year, the Bureau of Customs three million orders, the Department of Agriculture two million feed grain and wheat diversion orders, and the FCC more than one million licenses (each an order). Davis, *supra*, at 782.

10. Section 5(e) of the Administrative Procedure Act, 5 U.S.C. § 555(e) (1964), provides that agencies must give a brief statement of their reasons when they deny "a written application, petition, or other request of an interested person made in connection with any agency proceeding." (*See* note 2, *supra*.) Agency rules require the issuance of opinions with certain other orders. In fact, since its approval of the Miles-S.O.S. merger the Commission has enacted a rule requiring that decisions approving such mergers be accompanied by a "statement of supporting reasons." 16 C.F.R. 3.61(e) (1971). Finally, procedural due process may require agencies to issue

opinions in some cases not covered by statute or rule.

11. This holding and our subsequent holding that *Gulick* also does not require disclosure of the individual Commissioner's memoranda are, however, subject to the proviso that the memoranda issued by the Commission do not specifically indicate that reasons for its decisions in *Miles-S.O.S* are spelled out in one or more of the other inter-agency memoranda. If it develops on remand that the Commission has referred to memoranda in this manner, then any memoranda referred to, or the relevant portions thereof, must be disclosed. *Gulick* does not by its express terms require this result, since in that case we relied to some extent on the fact that the agency document containing the reference to staff memoranda was made public. The result is nonetheless necessary to prevent the development of secret law within the Commission. *See* pages 709, 710, *infra*.

whether the memoranda prepared by the individual Commissioners accurately reflect the grounds for the Commission's decision in *Miles-S.O.S.*

The possible inaccuracies and omissions in these memoranda are not, however, the most important consideration affecting our conclusion that they need not be disclosed. We are primarily motivated by our belief that there is a great need to preserve the free flow of ideas between Commissioners. As we have noted, Congress expressly indicated that intra-agency communications of thoughts and opinions are to be protected, and nowhere is that protection more needed than between the ultimate decision-makers within an agency. In most agencies the exchange of views between Commissioners or Board members is considered perhaps the most essential element in the decisional process. Thus, continual expression of ideas and strong advocacy of positions are to be encouraged to the fullest at this level. In our opinion any attempt to separate a Commissioner's statements as to the basis for a past decision from his views regarding the disposition of a current case and to disclose the former might well infringe upon these essential communications. We therefore conclude that Gulick should not be extended to require that such attempts be made.

■ With regard to the memoranda issued by the Commission, however, we think the philosophy underlying *Gulick* requires a different result. These memoranda were prepared by the individuals directly responsible for the *Miles-S.O.S.* decision and, as documents emanating from the Commission as a whole, they are presumably neither argumentative in nature nor slanted to reflect a particular Commissioner's view. Hence, the danger that any explanation they may give of Miles-S.O.S. is not the correct one is greatly reduced. We also feel the policy of promoting the free flow of ideas within the agency does not apply here, for private transmittals of binding agency opinions and interpretations should not be encouraged. These are not the ideas and theories which go into the making of the law, they are the law itself, and as such should be made available to the public. Thus, to prevent the development of secret law within the Commission, we must require it to disclose orders and interpretations which it actually applies in cases before it. *See generally* Davis, *supra* at 797. On remand, then, the District Court judge should re-examine the memoranda issued by the Commission to determine whether they do in fact contain such material. If they do, this material must be made available to Sterling. Moreover, as we have already noted, if the Commission memoranda specifically indicate that reasons for its Miles-S.O.S. decision are contained in one or more of the memoranda prepared by individual members of the Commission or its staff, these memoranda, or the relevant portions thereof, must also be disclosed.

■ The Commission contends that the remaining documents at issue in this case fall within the exemption for "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b) (4) (Supp. IV 1969). These are the documents contained in the General Foods Final Compliance Report. They were described by the District Court judge as follows:

1. *Numbered paragraphs 3(b) and 4 of Exhibit VII of a document dated July 5, 1968 entitled "Memorandums on Divestiture of S.O.S. Business by General Foods Corporation."* Paragraph 3(b) indicates the markets shares of certain Miles Laboratory products, i.e. ALKA-SELTZER, ONE-A-DAY, and CHOCKS. Paragraph 4 reflects the dollar amounts of sales of certain products between Miles Laboratories and General Foods.

2. *Report dated May 27, 1968, entitled "The S.O.S. Business."* This item contains a breakdown of sales and profit data for each S.O.S. product over the ten year period, 1959–1968.

3. *Report dated June 3, 1968, entitled "The S.O.S. Business—Index to Exhibits"*, contains breakdown of sales, cost and profit data by product and customer classification.

4. *S.O.S. Offers at July 8, 1968.* This item lists the bids submitted to General Foods on a closed basis. The amounts of the various bids—not the names of the bidders—were labelled confidential.

(J.A. 72.)

We feel the District Court judge was correct in his conclusion that these documents are covered by § 552(b) (4). The Senate Reports on the Freedom of Information Act describe the purpose of this section as follows:

> This exception is necessary to protect the confidentiality of information which is obtained by the Government through questionnaires or other inquiries, but which would customarily not be released to the public by the person from whom it was obtained. *This would include business sales statistics*, inventories, customer lists, and manufacturing processes. \* \* \*

S.Rep.No.813, 89th Cong., 2d Sess. 9 (1964). The House Reports add:

> It would also include information which is given to an agency in confidence, since a citizen must be able to confide in his Government. Moreover, where the Government has obligated itself in good faith not to disclose documents or information which it receives, it should be able to honor such obligations.

H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1964). The documents involved here contain information concerning business sales. Moreover, both Miles and General Foods have sought to prevent public disclosure of these documents, and the Commission has agreed to treat them as confidential. Sterling contends that the Commission's decision regarding the confidentiality of the documents was made in connection with the transfer of S.O.S. to Miles and that even if that initial decision was correct, the reasons for it

"no longer obtain so long after the transfer has been made, and so long after the trade information was current." (Brief for Appellant at 25.) However, judging from the District Court judge's descriptions of these documents and from Miles' continuing efforts to prevent disclosure of them, we conclude that the information contained therein remains the type "which would customarily not be released to the public by the person from whom it was obtained."

The judge's descriptions also lead us to believe that making deletions will not render the documents subject to disclosure under the Act. Sterling apparently agrees, for it does not raise this point.

Sterling does, however, argue once again that these documents, though otherwise exempt, are subject to disclosure under *Gulick*. In doing so it relies very heavily on the Commission's statement that in approving the sale of S.O.S. to Miles it "entirely relied upon the information submitted by General Foods and its approval is conditioned upon this information being accurate and complete." (J.A. 8.) Sterling equates this statement with one made by the Maritime Subsidy Board which we commented upon as follows in our *Gulick* opinion:

> If the Maritime Subsidy Board did not want to expose its staff's memorandum to public scrutiny it should not have stated publicly in its April 11 ruling that its action was based on that memorandum, giving no other reasons or basis for its action.

(133 U.S.App.D.C. at 389, 411 F.2d at 703.) We do not believe the two statements are comparable, however. The clear intent of the Maritime Subsidy Board was to indicate that the reasons underlying its decision were embodied in the earlier memorandum. The purpose of the Commission's statement concerning its *Miles-S.O.S.* decision was, on the other hand, merely to indicate that it would later reopen this decision if it discovered that the facts presented by General Foods were not accurate. It is ludicrous to imply from this statement that every particle of information submitted

by General Foods was essential to the Commission's decision. Moreover, even if such an implication were feasible, we would be unwilling to lay down a rule whereby an agency would be required to disclose confidential commercial or financial information which it received and relied on in making a decision, yet would not be required to disclose similar information which it did not rely upon; we see no rational reason for drawing such a distinction. For that reason the relevant documents in the General Foods Final Compliance Report are exempt from disclosure under the Freedom of Information Act and unaffected by our decision in *Gulick*.

### III. *Sterling's Claim of Denial of a Fair Hearing*

Before reaching the question whether the Commission's refusal to consider the *Miles-S.O.S.* decision a highly relevant precedent and whether to disclose the documents Sterling seeks will deny it a fair hearing, we must first ascertain whether the District Court Judge had jurisdiction to consider this question at this interlocutory stage of the Commission proceedings. He concluded that he did not have jurisdiction because Sterling had not exhausted its administrative remedies, and we agree with this conclusion.

■ The reasons for requiring exhaustion of administrative remedies were set forth recently by the Supreme Court in McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). The primary purpose served by the doctrine appears to be "the avoidance of premature interruption of the administrative process." *Id.* at 193, 89 S.Ct. at 1662. As the Court said:

> The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require

expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages.

*Id.* at 193–194, 89 S.Ct. at 1662. Exhaustion is also required to facilitate judicial review, which "may [otherwise] be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise." *Id.* at 194, 89 S.Ct. at 1663. Interests of judicial economy are also served. If the agency discovers and corrects its earlier mistakes or the complaining party prevails in the later administrative proceedings, judicial review may well be unnecessary.

■ In applying these principles in cases involving interlocutory appeals from agency action, the courts appear to have formulated the general rule that a party may bypass established avenues for review within the agency only where the issue in question cannot be raised from a later order of the agency, Jewel Companies, Inc. v. FTC, 432 F.2d 1155 (7th Cir. 1970); Elmo Division of Drive-X Co. v. Dixon, 121 U.S.App.D.C. 113, 348 F.2d 342 (1965), or where the agency has very clearly violated an important constitutional or statutory right. Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 306 F.2d 260 (1962). *See also* Oestereich v. Selective Service System Local Bd., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1960); Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). Some cases, including *McKart*, suggest that judicial intervention may also be proper even though the agency action is not clearly illegal if the question involved is a strictly legal one not involving the agency's expertise or requiring for their decision the development of other factual or legal issues. The rationale for this extension of the general rule is that "judicial review [of these questions] would not be signifi-

cantly aided by an additional administrative decision" McKart v. United States, *supra*, 395 U.S. at 199, 89 S.Ct. at 1665; hence, the additional decision is not required.

In view of the judicial principles and practices discussed above, the requirement that administrative remedies be exhausted appears applicable here. The Commission may reverse its position with regard to the issue before us or may eventually uphold the Sterling-Lehn & Fink merger. If either event comes to pass, there will be no need for Sterling to seek judicial review. If neither occurs, Sterling will be able to raise the due process issue on appeal from the Commission's final order in the case. At that time we will have before us the entire record of the proceedings and the Commission's rulings and will thus be qualified to determine whether Sterling received a fair hearing. This is not such a strictly legal question that it can be properly decided on the incomplete facts and argument now before us. Accordingly, we feel its resolution should be deferred until the Commission proceedings have run their course.

Sterling disputes this reasoning on at least two grounds. To begin with, Sterling contends that requiring exhaustion of remedies so that a full record may be developed is not a sound policy here because it is so handicapped by its inability to know the basis of the *Miles-S.O.S.* decision that it cannot present a proper case. As a result, we will, according to Sterling, be unable "accurately to appraise the relevance of the undisclosed *Miles-S.O.S.* information or the prejudice to Sterling resulting from its ex-

clusion." (Brief for Appellant at 31.) We do not agree with this appraisal. If on a later appeal Sterling raises the issue of the fairness of the hearing it received before the Commission, we will not simply determine the extent to which the *Miles-S.O.S.* case should be regarded as a precedent, as Sterling seems to think, but whether Sterling had sufficient evidence to argue the precedential value of that case. Moreover, we are fully aware that the Commission did not set forth its reasons for approving the Miles-S.O.S. merger and we will closely scrutinize whatever efforts it may make to distinguish that case if called upon to do so. It is thus our opinion that there are benefits to be gained from requiring exhaustion of remedies and that Sterling will not be unduly prejudiced by being required to proceed through the established administrative channels.

Sterling's second point is that raising the due process issue on appeal from the Commission's final order in this case will not provide it an adequate remedy because we may well be required to apply a narrow standard of review at that later date. According to Sterling, our review may be limited because of the general rule that, absent a patent abuse of discretion, the Commission has discretion to proceed against one party without acting against others similarly situated. *E. g.*, FTC v. Universal-Rundle Corp., 387 U.S. 244, 250, 87 S.Ct. 1622, 18 L.Ed.2d 249 (1967). It fears that the Commission's approval of the sale of S.O.S. to Miles may be equated with the Commission's not attacking a merger so that the "patent abuse" test applies.[12] Even if it were clear that

---

12. There is some indication that the Commission feels that these two situations are comparable. Its brief contains the following passage:

> Then again, the Commission may hold that Sterling has violated Section 7 and may agree that the Miles-S.O.S. situation is similar, but may go on to explain that the sale of S.O.S. to Miles was approved not because of a finding that it did not violate Section 7, but rather because Miles was the least ob-

jectionable feasible purchaser of the S.O.S. business; and it was deemed preferable to have Miles purchase the business rather than having the divestiture order against General Foods fail because of lack of purchasers. This, indeed, would be consistent with the Commission's statement in its latest interlocutory order that the possible resemblance of the facts of Miles-S.O.S. to the fact of Sterling-Lehn & Fink is not pertinent. * * *

Sterling's fears would be realized, which it is not, we do not feel the exhaustion of remedies question would be affected. The fact that an agency is not required to treat similarly situated parties the same certainly does not bolster one party's argument that he should be granted access to information which allegedly explains how another party was treated. Moreover, if Sterling continues to feel that it "is being denied access to evidence which might demonstrate the patent abuse required by *Universal-Rundle*" (Brief for Appellant at 32), it can raise this issue on appeal from the Commission's final order when a full record has been made.[13]

We thus conclude that the District Court judge correctly ruled that he did not have jurisdiction to decide whether the Commission's refusal to grant Sterling access to the documents in question would deny Sterling a fair hearing. However, since it is necessary for the judge to make further findings regarding Sterling's right to some of these documents under the Freedom of Information Act, we must require a remand.

Remanded for proceedings consistent with this opinion.

(Brief for Appellee at 26.) Of course, if the Commission does ultimately conclude that the "patent abuse" test applies in this situation, this conclusion will be subject to judicial review.

13. There are also some indications that Sterling feels the limited standard of review generally applicable to final agency orders will prevent it from obtaining full review of its claim of denial of a fair hearing on a later appeal. However, the rule that agency decisions must be affirmed if supported by adequate findings of fact and substantial evidence in the record obviously does not apply where a proper hearing has not been held.

1. Sterling contends alternatively that absent disclosure it will be denied the full and fair hearing required by the Administrative Procedure Act, 5 U.S.C. § 551 et seq. (1970). I agree with the Court

BAZELON, Chief Judge (concurring in part and dissenting in part):

Sterling Drug, Inc. contends that the Freedom of Information Act, 5 U.S.C. § 552 (1970), requires the Federal Trade Commission to disclose two types of documents:[1] first, Commission-prepared papers which allegedly described the rationale for the Commission's approval of a merger between Miles Laboratories and S.O.S.; and second, statements submitted to the Commission in connection with the Miles-S.O.S. merger and which were apparently relevant to the Commission's review of that merger.[2] The Commission refused disclosure on the grounds that the documents fall within the Act's exemptions for intra-agency memoranda,[3] or confidential financial information.[4] Thus, the interpretation of these exemptions lies at the heart of this controversy, and I respectfully disagree with the interpretation put forward by the Court.

### I.

The Freedom of Information Act requires disclosure of each agency's

(A) final opinions, including concurring and dissenting opinions, as well as orders, made in the adjudication of cases;

that consideration of this alternative claim is barred by the failure to exhaust administrative remedies.

2. Shortly after issuing a complaint charging that the acquisition by Sterling Drug of Lehn & Fink violated Section 7 of the Clayton Act, 15 U.S.C. § 18 (1964), the FTC approved without opinion a divestiture plan in another case calling for the sale of the S.O.S. Company to Miles. In the proceedings before the Commission, Sterling has taken the position that the approval of the Miles-S.O.S. merger demonstrates that its acquisition of Lehn & Fink did not violate the Clayton Act. Sterling seeks disclosure in order to show that both mergers involve factors which require application of the same policy and result.

3. 5 U.S.C. § 552(b) (5) (Supp. IV 1969).

4. 5 U.S.C. § 522(b) (4) (Supp. IV 1969).

(B) those statements of policy and interpretation which have been adopted by the agency and are not published in the Federal Register.

§ 552(a) (2) (A-B). It then exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." § 552(b) (5).[5]

In Bristol-Myers Co. v. FTC, 138 U.S. App.D.C. 22, 424 F.2d 935 (1970) we pointed out that the inter-agency memorandum exemption was designed to encourage "the free exchange of ideas among government policy makers."[6] But it should be clear that Congress hoped to encourage discourse during the *policy formulation stage*; the exemption was not designed to facilitate the easy exchange of substantive declarations of policy. Indeed, if it were, the exemption would have engulfed the rule. For at the same time that Congress sought

to enhance the process of policy formulation, it indicated unequivocally that the purpose of the Act was to forbid secret *law*.[7] And substantive declarations of policy are clearly "law" within the meaning of that prohibition. It necessarily follows that opinions and statements of policy must be disclosed while memoranda drafted as part of the agency's process of formulating such policy need not.[8]

Instead of asking whether any of the documents at issue were in substance policy declarations which should be disclosed, the Court makes an artificial division of the material into three categories: first, memoranda prepared by the Commission staff; second, memoranda prepared by individual members of the Commission; and third, memoranda issued by the Commission itself. The Court's treatment of documents in the third category—remanding them to the District Court to determine whether they contain binding opinions or statements of policy and interpretation—is consistent with

5. Contrary to my view, the Court concludes that most of the documents are "memorandums" within the terms of the exemption. It then goes on to consider the explicit limitation on the exemption. By its terms the exemption protects only those "memorandums" which "would not be available by law to a party' other than an agency in litigation with an agency." The Court construes this awkward phrase to mean that only those memoranda which would be routinely available through discovery in litigation —without regard to special need—fall outside the exemption. I agree. Whether or not the purpose of the Act would have been better served by allowing courts to apply discovery law to the facts of the particular applicant, that course is prohibited by the language of the Act and its legislative history.

6. 138 U.S.App.D.C. at 26, 424 F.2d at 939. *See* S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); H.Rep.No.1497, 89th Cong., 1st Sess. 10 (1965).

7. "The governing principle, which I think is without exception, is that secret law is forbidden." K. Davis, Administrative Law Treatise, § 3A.21 at 159 (1970 Supp.). Such an accommodation *comports with this Court's earlier holding* that "[t]he legislative plan creates a liberal disclosure requirement, limited

only by specific exemptions which are to be narrowly construed." Bristol-Myers v. FTC, *supra*, 138 U.S.App.D.C. at 25, 424 F.2d at 938. *See* Soucie v. David, 145 U.S.App.D.C. —, at —, 448 F.2d 1067, at 1080 (1971).

8. Davis, supra note 7, at 159. The application of this principle is not limited to the precise facts in American Mail Line, Ltd, v. Gulick, 133 U.S.App.D.C. 382, 411 F.2d 696 (1968). In *Gulick* the Maritime Subsidy Board specifically stated that its decision was based upon the memorandum sought disclosed, and quoted the last five pages of the memorandum as its own findings and determination. In this situation it was clear that the memorandum was substantive law adopted by the agency rather than a recommendation or step in the process of formulating policy. Accordingly, the Court ordered disclosure. It is crucial, however, to understand the limited significance of both the Board's reference to the memoranda as the basis, of its decision and its extensive quotation from it. By doing so, the Board made it obvious that the memoranda had been adopted as policy. It is the *adoption* of a memorandum as policy, however, and not the particular manner in which the adoption is indicated which is the touchstone of disclosure.

the purposes of the Act. But I disagree strongly with the Court's conclusion that memoranda falling within the first or second categories need never be disclosed.

The Court denies access to memoranda of staff and individual Commissioners primarily on the ground that the memoranda may not accurately reflect the decision of the Commission. I agree that the scheme of the Act exempts memoranda which are wholly preliminary or tentative in character, but I insist that the Act does require disclosure where the memoranda reveal opinions or policy statements which provided the basis for the administrative action in question. The Court seems to concede the point since it follows *Gulick* by allowing disclosure of memoranda within the forbidden categories if they are *specifically referred to* in memoranda within the non-forbidden category.[9] But *Gulick* was, after all, a fairly easy application of the statutory principle, and I can see no reason to read the facts of that particular case as marking the outer limits of the statute's reach. If these memoranda were in fact treated as having been adopted by the agency—as indicated by an affidavit of the Commission or testimony at the remand hearing—then the statute would clearly require disclosure even though the documents had never been referred to in other Commission memoranda.[10] Indeed, the Court recognizes that a particular document must be disclosed if it was *adopted* by the Commission, regardless of how that adoption is indicated.[11]

It follows that the case should be remanded with an instruction to determine whether *any* of the documents, regardless of artificial categories or labels, are "opinions" or "statements of policy and interpretation." [12] In making this determination, the burden of proof is upon the Commission. § 552(a) (3). If it seeks to withhold *all* of the memoranda, the Commission must show that an accurate statement of either the reasons for or the policies adopted by its approval of the Miles-S.O.S. merger *does not exist.*[13] Although proof may be made by

---

9. *See* note 11 of the opinion of the Court.

10. See note 8 *supra.* The Ninth Circuit seems to have reached the result I suggest in General Services Administration v. Benson, 415 F.2d 878 (9th Cir. 1969). With reference to documents that had apparently never been made public or referred to by the agency, the court stated:

> For example, exhibits A and B, described in Benson v. General Services Administration, D.C., 289 F.Supp. 590, 591, are not merely advisory opinions submitted for policy making purposes. Rather once exhibit A (the disposal plan) was approved, "it was to be followed by the regional office in making the disposal;" and the memorandum described as exhibit B "was used as a guide for higher authority and as a record of the reasons for the action taken." Thus, documents A and B took on the character of "statements of policy and interpretation which have been adopted by the agency and are not published in the Federal Register" —a category of materials specifically available to the public under 5 U.S.C. § 552(a) (2) (B).
>
> *Id.* at 881.

11. See note 7 of the opinion of the Court.

12. The Court would deny access to the statements issued by the individual Commissioners on the possibility that "[s]ince different Commissioners may have approved the merger for different reasons, the two memoranda at issue may provide only the individual Commissioner's reasons for approving the decision, not the reasons of the Commission as a whole." Opinion of the Court at 707. I submit, however, that if the memoranda in fact provide the reasons for the vote of the individual Commissioners to approve or disapprove the merger, they fall directly within the terms of the statute since subsection (a) (2) (A) provides for disclosure of "final opinions, *including concurring and dissenting opinions.*" (Emphasis added).

13. If the Commission had issued either an opinion or statement of reasons with its order approving the Miles-S.O.S. merger, there would have been no necessity to disclose the underlying memoranda. The Court says that it is unrealistic to require an opinion or statement to protect agency documents since some agencies, such as the Social Security Administration, issue millions of

affidavit, a bare statement that the documents are within the exemption is insufficient. *See* Affidavit of Joseph Shea, Secretary of the Federal Trade Commission, Joint Appendix at 52.

## II.

The Commission also refused Sterling's request for various documents submitted to the Commission by General Foods and others in connection with Miles' Purchase of S.O.S. and contained in the General Foods Final Compliance Report.[14] I agree with the Court that at this stage of the controversy these documents fall within the confidential financial information exemption. § 552 (b) (4). But if on remand the District Court finds that one or more of the Commission prepared documents are "opinions" or "statements of policy and interpretation," it may well also find that they contain sales, cost, or profit data derived from documents in the Compliance Report. The statute provides:

> To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, or staff manual.

§ 552(a) (2). *See* Grumman Aircraft Engineering Corp. v. Renegotiation

Board, 138 U.S.App.D.C. 147, 425 F.2d 578 (1970).

In this case, however, deletion is unlikely to provide a viable course. Deletion of names [15] would at this stage be fruitless, and deletion of the data, given the nature of Section 7 litigation, would likely render the opinion or interpretation meaningless. In such a situation the language of the statute, unlike that found in the confidential financial information exemption,[16] directs the court to balance the interests affected by disclosure.[17] The Senate Report indicates the nature of that balance as one of "the public's right to know with the private citizen's right to be secure in his personal affairs *which have no bearing or effect on the general public.*" [18] The maintenance of secret law would weigh heavily against the public interest.[19]

## III.

In the proceedings below, the District Court reviewed the documents *in camera*. While we have recommended this procedure in Freedom of Information Act cases, Soucie v. David, —— U.S.App.D.C. ——, 448 F.2d 1067 (1971), I am troubled by the fact that this short circuits the adversary process. The party seeking disclosure lacks the knowledge of the actual contents of the documents necessary to question the affidavits of the agency.

orders each year. Opinion of the Court at 14, 14n.9. Unlike the Social Security Administration, the Federal Trade Commission does not issue millions of orders of the type involved here. Indeed, as of 1965, the F.T.C. brought only 23 Section 7 cases which culminated in finding a violation or the entry of a consent decree. And only some fewer number resulted in the eventual approval of a divestiture purchaser. Elzinga, The Antimerger Law: Pyrrhic Victories.?, 12 J. of Law & Econ. 43 (1969). In those agencies where millions of orders are issued the likelihood is that extensive memoranda are not written or required because decisions are made simply on the basis of staff manuals, already required to be disclosed, § 552(a) (2) (C).

14. These documents are described at page 708 of the Court's opinion.

15. *See* S.Rep. *supra* note 6, at 7; H.Rep., *supra* note 6, at 8; Grumman Aircraft Engineering Corp. v. Renegotiation Board, 138 U.S.App.D.C. 147, 425 F.2d 578 (1970).

16. *See generally*, Davis, *supra* note 7, at § 3A.19.

17. *See* S.Rep., *supra* note 6, at 7; H.Rep., *supra* note 6, at 8.

18. S.Rep., *supra* note 6, at 7.

19. In construing the identical phrase in exemption 6, this Court recently held that "[t]he statutory language 'clearly unwarranted' instructs the court to tilt the balance in favor of disclosure." Getman v. NLRB, 146 U.S.App.D.C. ——, at ——, 450 F.2d 670, at 674 (1971).

Still, we are unable to discern any solutions which would not require disclosure of *all* agency documents. Perhaps the parties in this and future cases may be able to propose some acceptable solutions of the problem. Until then litigants will have to rely on the trial court's careful examination and appellate review.[20]

20. When the decision of the trial court is based on written or uncontraverted oral evidence alone, there is no particular reason to be bound by the trial court's findings of fact and the clearly erroneous rule does not apply. *See generally* 5 J. Moore, Federal Practice ¶ 52.04 (1969) and cases there cited.