** Summary ** PRICE COMMISSION PRENOTIFIER REQUIREMENTS NOT IN CONFLICT WITH STATE LAW The Governor of Oklahoma and the State Board for Property and Casualty Rates may authority to enter into an executive agreement with the Federal Price Commission that the State Board will act as certifier for proposed insurance rate increases to the Price Commission. The requirement of the Price Commission that prenotifier forms submitted to the State Board in this certification process be held in a confidential status by the Board is not in conflict with 36 O.S. 338 [36-338] (1971). The Attorney General has considered your request for an opinion wherein you inquire as to the proper resolution of a possible conflict between certain federal regulations adopted by the Price Commission and provisions of the State Insurance Code requiring that records of the State Board for Property and Casualty Rates shall be open to public inspection. Under regulations adopted by the Federal Price Commission, commonly known as Phase II of the Government's Economic Stabilization Program, an insurance carrier that had revenues of $250 million or more during the calendar year preceding the effective date of a proposed rate increase is designated a "prenotifier." Such a "prenotifier" must notify the Price Commission and the appropriate state regulatory agency of each state to which the rate increase is applicable of each proposed rate increase which affects $1 million or more in aggregate annualized premiums under the existing rate. 6 C. F. R. 300.20 (1972). The process of review by the Price Commission may be simplified if the appropriate state regulatory agency agrees to act as "certifier" for the proposed rate increases of which it receives prenotification. The appropriate state regulatory agency acting as a certifier acts upon all prenotifications received within twenty days of receipt by certifying that the increase does or does not comply with Price Commission criteria set out in the regulation. Certification by the state regulatory agency is not binding upon the Price Commission, and it has no bearing upon the acceptance or rejection of the proposed rate change insofar as the state regulatory agency itself is concerned. By the terms of an Executive Agreement executed by Governor David Hall on January 26, 1972, the State Board for Property and Casualty Rates has agreed to act as a certifier for proposed insurance rate increases on behalf of the Price Commission. This Agreement was executed in accordance with 6 C.F.R. 300.20 (e), which provides that: "Certification by a State regulatory agency: A State regulatory agency may agree, in writing, with the Price Commission to certify the rate increases of which it has received prenotification under Paragraph (d) of this section are or are not in compliance with Paragraphs (b) and (c) of this section Price Commission rate increase criteria, if that agency includes in the agreement a statement that — "(1) It has the authority and ability to make those certifications; and "(2) All information obtained by it in the certification procedure will be kept in a confidential status. . . ." (Emphasis added) In fact, the only document required to be kept in a confidential status pursuant to the terms of the quoted regulation is the federally prescribed prenotifier form submitted to the state agency by the insurance company seeking a rate increase. Title 36 O.S. 338 [36-338] (1971) provides that: "The Secretary of the State Board for Property and Casualty Rates shall maintain in permanent form records of the official transactions, examinations, completed investigations and proceedings of the Board, and keep such records in his office. Such records and insurance filings in his office shall be a public record and open to public inspection." (Emphasis added) You ask the following questions: 1. Does the Oklahoma Insurance Code permit the State Board for Property and Casualty Rates to act as a certifier for the Federal Price Commission on property and casualty rate filings as outlined above? 2. Does the requirement of the Federal Price Commission that the insurer's prenotifier form be held in a confidential status conflict with 36 O.S. 338 [36-338] (1971)? Your first question should be answered in the affirmative. There are no specific statutory provisions which prohibit the State Board for Property and Casualty Rates or the Governor from executing the type of Executive Agreement outlined above. In addition, the Governor has a duty to carry on "all intercourse and business of the State with other states and with the United States." Okla. Const. Article VI, Section 8 . Also, the ability to cooperate with the federal government in matters such as this is included in the supreme executive power vested in the Governor by Section 2 of Article VI, Section 2 of the Oklahoma Constitution. Powers of the Board for Property and Casualty Rates include those powers expressly conferred or reasonably implied from the provisions of the Insurance Code. Title 36 O.S. 332 [36-332](B) (1971). Absent statutory or constitutional prohibitions, a cooperation agreement between the Price Commission and the Board for Property and Casualty Rates is within the realm of executive authority. Your second question was whether there is a conflict between the Price Commission regulation on insurers, 6 C.F.R. 300.20, and 36 O.S. 338 [36-338] (1971). The regulation, quoted above, requires that prenotification forms submitted by insurers be held in a confidential status. Section 36 O.S. 338 [36-338] of Title 36 requires that "records of the official transactions, examinations, completed investigations and proceedings of the Board" shall be open to public inspection. The question is whether the federally prescribed prenotification forms used by the State Board for Property and Casualty Rates for purposes of certification of rate increases to the Price Commission is an "official transaction, examination, completed investigation, or proceeding" of the Board for Property and Casualty Rates. The prenotifier form may not be considered a record of an "official transaction, examination, or completed investigation" of the Board for Property and Casualty Rates. Those terms clearly refer only to records of proceedings conducted by the Board under state law. The Board is empowered to enforce and administer the provisions of Articles 9, 10 and 36 of the Insurance Code, relating to rates and rating organizations for property and casualty insurance as defined in the code. 36 O.S. 332 [36-332] (1971). Subsection C of Section 332 authorizes the Board to conduct investigations and make inspections only in connection with the fulfillment of its duties under State law. Also, the term "official transaction" as used in the Insurance Code refers only to transactions conducted under State law. Such a legislative intent may be inferred from a reading of the relevant provisions of the Insurance Code as a whole. Taylor v. State, Okl. Cr., 377 P.2d 508 (1962). We next question whether the prenotifier form required to be kept confidential by Price Commission regulations is a "proceeding" of the Board under the provisions of 36 O.S. 338 [36-338] (1971). In the strict sense, the Board "proceeds" whenever it performs any act. However, the legal definition of the term "proceeding" is not quite so broad. The term "individual proceeding" is defined in 75 O.S. 301 [75-301](7) (1971) as "the process employed by an agency for the formulation of an order." Under the Administrative Procedures Act, a "proceeding" is simply a case or controversy to be decided by an administrative agency. This "case" concept of the term "proceeding" is reinforced by this definition: "In a general sense, the form and manner of conducting juridical business before a court or judicial officer; regular and orderly progress in form of law; including all possible steps in an action from its commencement to the execution of judgment. Sometimes, merely the record history of a case." Black's Law Dictionary, "Proceeding" 1368 (4th Ed. 1968). In Rice v. United States, 356 F.2d 709 (8th Cir. 1966), a conviction for conspiracy to intimidate and impede witnesses in a proceeding before the National Labor Relations Board was affirmed. The Court held that a "proceeding" was pending at the time of defendant's acts, even though the proceeding was in its preliminary stages. The Court stated at 356 F.2d 712 that: "Proceedings before a governmental department or agency simply mean proceeding in the manner and form prescribed for conducting business before the department or agency, including all steps and stages in such an action from its inception to conclusion." See also Sterling Drug, Inc. v. FTC, 450 F.2d 698 (D.C. Cir. 1971); State v. Worten, 167 Okl. 187, 29 P.2d 1
(1933);Stone v. Hodges, Okl., 435 P.2d 165 (1967); Shirnnel v. People, 108 Colo. 592, 121 P.2d 491 (1942); Grand Forks Herald, Inc. v. Lyons, N.D., 101 N.W.2d 543
(1960); In re Holmes, 379 Pa. 599, 109 A.2d 523 (1955). A broad interpretation of the term " proceeding " is not justified by the particularity of the terms preceding it. Title 36 O.S. 338 [36-338] (1971) requires that records of the "official transactions, examinations, completed investigations, and proceedings of the Board" shall be open to public inspection. Under the rule of statutory construction known as ejusdem generis, general words do not explain or amplify particular terms preceding them, but are themselves restricted and explained by the particular terms. Application of Central Airlines,199 Okl. 300, 185 P.2d 919 (1947). If "proceeding" is interpreted to mean any act performed by the Board for Property and Casualty Rates, then the adjectives which precede that term are meaningless. Therefore, your second question should be answered in the negative. There is no conflict between 36 O.S. 338 [36-338] (1971) and the Price Commission Regulation, 6 C.S.R. 300.20 (e), which requires that prenotifier forms submitted by insurance companies seeking Price Commission approval of rate increases be held in a confidential status. The only function of the State Board for Property and Casualty Rates in the process of Price Commission approval of such a rate increase is to certify, within twenty days of receipt of a prenotification form, whether the proposed rate increase conforms to Price Commission criteria. This function is merely ancillary to the duties of the Board prescribed in the State Insurance Code. This certification by the Board is not a proceeding of the Board under the terms of 36 O.S. 338 [36-338], which contemplates proceedings conducted under State law. In summary, it is the opinion of the Attorney General that the State Board for Property and Casualty Rates and the Governor of Oklahoma had authority to enter into an Executive Agreement with the Price Commission that the State Board would act as certifier of proposed rate increases in Oklahoma. Title 36 O.S. 338 [36-338] does not require that the single document required to be held in a confidential status under the Federal regulations in the Price Commission certification process shall be open to public inspection. Therefore, the Board may properly hold such prenotifier forms in a confidential status in accordance with the Price Commission regulations. (Charles L. Pain)