The FIRESTONE TIRE AND RUBBER
COMPANY, Plaintiff,

v.

William T. COLEMAN, Jr., et
al., Defendants.

Nos. C75–232A, C76–965 and C76–1053.

United States District Court,
N. D. Ohio, E. D.

Oct. 21, 1976.

Patrick F. McCartan, Robert R. Weller, Irving Berger, John L. Strauch, Cleveland, Ohio, for plaintiff; Jones, Day, Reavis & Pogue, Cleveland, Ohio, Joseph E. Downs, Akron, Ohio, of counsel.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Frederick M. Coleman, Richard J. French, Asst. U. S. Attys., Cleveland, Ohio, Harland F. Leathers, Jeffrey Axelrad, Sandra Wien, Dept. of Justice, Washington, D. C., Frank A. Berndt, Acting Chief Counsel, Charlotte Uram, Atty. Nat'l Highway Traffic Safety, U. S. Dept. of Transp., Washington, D. C., for defendants.

Steven I. Frank, Alphonse M. Alfano, Atty. for Dept. of Justice, Washington, D. C.

## MEMORANDUM OF OPINION

MANOS, District Judge.

On May 8, 1975 the National Highway and Traffic Safety Administration [NHTSA] issued a non-final administrative determination that Firestone's 500 Bias Ply Steel Belt Tire [500 Tire] was in non-compliance with Federal Motor Vehicle Safety Standard 109 [FMVSS 109], 49 C.F.R. § 571.109, which prescribes laboratory wheel tests designed to determine the high speed and endurance capabilities of pneumatic passenger tires. On August 13, 1975 plaintiff Firestone filed Civil Action Number C75–232A in the Northern District of Ohio under the Freedom of Information Act [FOIA], 5 U.S.C. § 552 et seq., seeking disclosure of unrevealed information pertaining to NHTSA's promulgation and enforcement of FMVSS 109 and related tire safety standards.

On September 10, 1976 Firestone filed Case No. C76–965 alleging that NHTSA issued a *final* determination ordering Firestone to issue recall notices to all current owners of the tire because the tire in question did not comply with FMVSS 109. *See*, 15 U.S.C. §§ 1412(b), 1413. In Case No. C76–965 Firestone charges that FMVSS 109 does not accurately measure tire road performance and that NHTSA employed laboratory procedures which were not authorized under FMVSS 109.

On September 21, 1976 this Court issued a TRO restraining the defendant from seeking a penalty [1] against Firestone for failure to issue recall notices pending the commencement of trial in Case No. C76–965, and the Court ordered the consolidation of Case Nos. C75–232A, C76–965, with a related enforcement action subsequently filed by the defendants.[2] *See*, 15 U.S.C. § 1415(a)(1); Local Rule 7(d)(2)(D)(iii)(2). The TRO was subsequently extended by agreement of the parties first to October 20, 1976, and then to October 26, 1976.

---

1. *See*, 15 U.S.C. § 1415(c)(1).

2. The related enforcement action was filed by NHTSA in Federal District Court for the District of Columbia and assigned Case No. C76–1703 by that Court a few hours after C76–965 was filed in the Northern District of Ohio. Upon transfer to this Court it was assigned Case No. C76–1053. In *Ford Motor Company v. Coleman*, 402 F.Supp. 475, 486, fn. 30 (D.C. 1975) a three judge district court panel indicated that a manufacturer's pre-enforcement action should be consolidated with any governmentally initiated enforcement action which is filed in the District of Columbia. If *Ford Motor Company, supra*, fn. 30, correctly stated the law, this Court would have been required to order Case Nos. C75–232A and C76–965 consolidated in the D.C. District. However, *Ford Motor Company*, fn. 30, is incorrect. The language of 15 U.S.C. § 1415(a)(1) does not support the dicta in *Ford Motor Company*, fn. 30, and neither does *General Motors v. Volpe*, 457 F.2d 922, at 923–24 (3rd Cir. 1972), which is the case relied upon by the *Ford Motor* court in footnote 30, because *General Motors* was decided over a year *before* the effective date of 15 U.S.C. § 1415(a)(1) which was December 26, 1974. *See*, Section 111 of Pub.Law 93–492; 1974 U.S.Code Cong. and Admin.News, p. 6075. This Court understands 15 U.S.C. § 1415(a)(1) to place unfettered discretion in the District Court in which the first action related to a NHTSA recall order is filed. The problem of forum shopping raised in *Ford Motor Company, supra* at fn. 30 is implicit in the plain meaning of the statute, and courts are not permitted to contrive a different result based on *their* view of the underlying policy considerations.

"[W]here the act is clear upon its face, and when standing alone it is fairly susceptible of but one construction, that construction must be given to it. . . ." *Hamilton v. Rathbone*, 175 U.S. 414, 419, 20 S.Ct. 155, 157, 44 L.Ed. 219 (1899).

Both parties in the Freedom of Information Act[3] case moved for summary judgment, and the plaintiffs in Case No. C76–965 moved the Court to order the defendants to produce documents for discovery pursuant to Fed.R.Civ.P. 34. The Freedom of Information Act complaint and the Rule 34 discovery motion are directed at a large body of documents, sealed copies of which the defendants filed with the Court for an *in camera* inspection.[4] *See Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820, 823–28 (1973), *cert. den.* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). After examining the briefs, and affidavits offered by the parties, as well as the documents which the defendants filed under seal, the Court first rules on the FOIA motions, and second on the Rule 34 motion.

## I.

### FREEDOM OF INFORMATION ACT

In *N.L.R.B. v. Sears Roebuck*, 421 U.S. 132, 136–37, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975) the United States Supreme Court describes the operation of the FOIA.

"The Act's background and its principal objectives are described in *EPA v. Mink*, 410 U.S. 73, 79–80, 93 S.Ct. 827, 832–833, 35 L.Ed.2d 119, and will not be repeated here. It is sufficient to note for present purposes that the Act seeks 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language.' S.Rep.No.813, 89th Cong., 1st Sess., 3 (1965) (hereinafter S.Rep. 813); *EPA v. Mink, supra*, at 80, 93 S.Ct. [827], at 832. As the Act is structured, virtually every document generated by an agen-

cy is available to the public in one form or another, unless it falls within one of the Act's nine exemptions. Certain documents described in 5 U.S.C. § 552(a)(1) such as 'rules of procedure' must be published in the Federal Register; others, including 'final opinions . . . made in the adjudication of cases', 'statements of policy . . . [or] interpretations which have been adopted by the agency,' and 'instructions to staff that affect a member of the public,' described in 5 U.S.C. § 552(a)(2), must be indexed and made available to a member of the public on demand, H.R.Rep.No.1497, 89th Cong., 2d Sess., 8 (1966) (hereinafter H.R.Rep. No.1497), U.S.Code Cong. & Admin.News, 1966, p. 2418. Finally, and more comprehensively, all 'identifiable records' must be made available to a member of the public on demand. 5 U.S.C. § 552(a)(3). The Act expressly states, however, that the disclosure obligation 'does not apply' to those documents described in the nine enumerated exempt categories listed in § 552(b)." *See also, F.A.A. Administrator v. Robertson*, 422 U.S. 255, 261–62, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975).

The documents which Firestone charges must be disclosed pursuant to the FOIA fall into several categories: Documents employed in NHTSA's inquiry into Firestone's 500 Tire[5]; Memoranda passing between NHTSA's legal office and its Office of Standards Enforcement [OSE][6]; Guidelines regarding acceptable failure rates for tires tested under FMVSS 109 and annual test plans for FMVSS 109 and related standards[7]; Memoranda from closed NHTSA investigations of tires other than

---

**3.** Case No. C75–232A.

**4.** On September 20, 1976 the defendants filed sealed copies of most of the documents which the plaintiff seeks to view before trial in Case No. C76–965. These documents are indexed according to numbered tabs. Each numbered tab is described by a second affidavit submitted by Francis Armstrong, the Director of NHTSA's Office of Standards Enforcement. The paragraphs in the second affidavit are numbered to correspond with the tabbed sections of the *in camera* inspection materials

which they describe. *See*, Defendants' *Report to the Court* filed September 20, 1976. Tab references throughout this opinion refer to the appropriately numbered sections of the *in camera* inspection material. References to "Armstrong's Affidavit" are to his second affidavit.

**5.** *See*, Tabs 5(a) through 5(c).

**6.** *See*, Tabs 6(a) through 6(d).

**7.** *See*, Tabs 8 through 9(g).

the Firestone 500 [8]; Written recommendations regarding which documents must be placed in the public viewing file and which should be deleted from that file [9]; Information received from manufacturers during NHTSA investigations [10]; Written plans and appraisals regarding pending NHTSA investigations other than the Firestone 500 investigation [11]; Records pertaining to the formulation of FMVSS 109, 110, 117, 119 [12].

■ The first category of materials which NHTSA seeks to shelter from disclosure are documents which the agency employed during its inquiry into Firestone's 500 Tire. *See*, Tabs 5(a)–5(c). NHTSA argues that these documents are working drafts and notes which reflect the preliminary analysis and evaluation of NHTSA's engineers, and therefore it claims a disclosure exemption under 5 U.S.C. § 552(b)(5). *See*, Armstrong's Second Affidavit, ¶¶ 4, 5. However, a review of the materials submitted to the Court for inspection in Tabs 5(a) through 5(c) reveals factual information concerning FMVSS 109, and NHTSA's inquiry into the Firestone 500 Tire's compliance with that standard. The Court finds portions of the information contained in Tabs 5(a) through 5(c) constitute "instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C), and that most of that information constitutes reasonably described records which must be made "promptly available to any person," *see*, 5 U.S.C. § 552(a)(3). The Court recognizes that 5 U.S.C. § 552(b)(5) exempts, "intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." However, the United States Supreme Court has narrowly limited the reach of the (b)(5) disclosure exemption to,

> "those documents, *normally* privileged in the civil discovery context. The privileges claimed by the government to be relevant to this case are (i) the 'generally . . . recognized' privilege for 'confi-

dential intra-agency advisory opinions . . . .' *Kaiser Aluminum and Chemical Corp. v. United States*, 157 F.Supp. 939, 946, 141 Ct.Cl. 38 (1958), Reed, J., disclosure of which would be 'injurious to the consultative functions of government . . . .' *Kaiser Aluminum & Chemical Corp., supra* at 946, *E.P.A. v. Mink, supra*, 410 U.S., at 86–87, 93 S.Ct. [827], at 836 (sometimes referred to as 'executive privilege'), and (ii) the attorney-client and attorney work product privileges generally available to all litigants." *Sears Roebuck, supra*, 421 U.S. at 149, 95 S.Ct. at 1515.

In footnote 16 the Court defined the perimeter of the (b)(5) Exemption when it wrote:

> "However, it is not sensible to construe the Act to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling. Indeed, the House Report says that Exemption 5 was intended to permit disclosure of those intra-agency memoranda which would *'routinely be disclosed'* in private litigation, H.R.Rep.No.1497, p. 10, and we accept this as the law. *Sterling Drug Inc. v. F.T.C.* [146 U.S.App.D.C. 237], 450 F.2d at 704–05." *Sears Roebuck, supra* at 149, fn. 16, 95 S.Ct. at 1516, *see also* 154–55, 95 S.Ct. 1504 (emphasis added). *See also, Kent Corp. v. N.L.R.B.*, 530 F.2d 612, 622–24 (5th Cir. 1976).

Therefore the *Sears Roebuck* Court recognized that Exemption 5 sheltered information from disclosure under the FOIA which would not be *routinely discoverable* in civil litigation. The Court concluded that,

> "Exemption 5, properly construed, calls for 'disclosure of all opinions and interpretations'—which embody the agency's effective law and policy, *and the withholding of all papers which reflect the agency's group thinking in the process of*

---

**8.** *See*, Tabs 11(a)(1) through 11(d)(4)(q).

**9.** *See*, Tabs 12 through 12(n), 25.

**10.** *See*, Armstrong's Affidavit, ¶ 13.

**11.** *See*, Armstrong's Affidavit, ¶¶ 14 through 22.

**12.** *See*, Tabs 23(a) through 23(e).

*working out its policy and determining what its law ought to be.'* Davis, The Information Act: A Preliminary Analysis, 34 *P.Chi.L.Rev.* 761, 797; Note, Freedom of Information Act and the Exemption for Inter Agency Memoranda, 86 Harv.L.Rev. 1047." *Sears Roebuck, supra* at 153, 95 S.Ct. at 1517 (emphasis added).

Few of the documents contained in Tabs 5(a) through 5(c) of the *in camera* inspection material comprise NHTSA's "group thinking." Those documents do not predominantly reflect the non-final opinions or recommendations of the NHTSA staff. Most of the documents in Tabs 5(a) through 5(c) recite severable factual matter and agency policy. The Court orders all documents contained in Tabs 5(a) through 5(c) disclosed pursuant to 5 U.S.C. § 552(a)(2)(B), (a)(3), except Tab 5(b), p. 18 (last page of that Tab); Tab 5(c), p. 9, Viewgraph 18 [13].

■ The second category of information which NHTSA seeks to shelter from disclosure under the FOIA are documents which passed between NHTSA's legal office and the OSE. *See,* Tabs 6(a) through 6(d). NHTSA charges that these documents are exempt from disclosure pursuant to the attorney work product, attorney-client, and intra-agency consultative privileges embodied in Exemption 5 of the FOIA. *See,* Armstrong's Affidavit ¶¶ 6(a) through 6(d); 5 U.S.C. § 552(b)(5); and *Sears Roebuck, supra* at 149, 153–55, 95 S.Ct. 1504; *Kent Corp., supra* at 617–24. The Court determines that the documents which comprise Tabs 6(a) through 6(d) are not "final opin-

ions" under § 552(a)(2)(A), but rather a body of information which constitutes either "instructions to staff that affect a member of the public," *see,* § 552(a)(2)(C), or reasonably described records which the agency must make "promptly available to any person," *see,* § 552(a)(3). The Court finds that because these documents were obviously prepared in contemplation of litigation they are protected by the attorney-client, attorney work product, and intra-agency consultative [14] privileges delineated in *Sears Roebuck, supra* at 149, 153–55, 95 S.Ct. 1504; *Kent Corp., supra* at 622–24.

■ The third category of information which NHTSA seeks to shelter from disclosure consists of memoranda, approved by the Director of OSE, which sets forth the agency's policy regarding the sampling plans which the OSE must follow when a tire fails a laboratory test under FMVSS 109. *See,* Tabs 8 through 9(g). The Court classifies this information as unpublished statements of policy and plans which have been adopted by the agency, *see* 5 U.S.C. § 552(a)(2)(B), as well as instructions to agency staff which affect a member of the public, *see,* § 552(a)(2)(C), and reasonably described records under § 552(a)(3). Therefore the material in Tabs 8 through 9(g) must be disclosed unless sheltered by specific exemptions in the FOIA. NHTSA argues that this material is sheltered by 5 U.S.C. § 552(b)(7) [15], which pertinently provides,

> "This section does not apply to matters that are . . . investigating records compiled for law enforcement purposes, but only to the extent that the production

---

**13.** The portion of page 9 of Tab 5(c) which is marked as Viewgraph 17 must be disclosed. *See,* 5 U.S.C. § 552(a)(4)(B). *Montrose Chemical v. Train,* 160 U.S.App.D.C. 270, 491 F.2d 63 (1974) is inapplicable because this record does not show that NHTSA either applied a substantial evidence rule, or issued a lengthy public final factual finding. *See, Montrose, supra,* at 68. Application of the D.C. Circuit's decision in *Montrose* to this case would emasculate the principle that severable factual material must be disclosed. *See, E.P.A. v. Mink,* 410 U.S. 73, 87–88, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). *Compare, Schwartz v. I.R.S.,* 167 U.S.App.D.C. 301, 511 F.2d 1303, 1305, fn. 8 (1975); *Vaughn*

*v. Rosen,* 173 U.S.App.D.C. 187, 523 F.2d 1136, 1147, fn. 38 (1975).

**14.** The Court finds that this material is protected by the intra-agency consultative privilege because it contains non-final staff recommendations which constitute the essence of "the agency group thinking in working out its policy." *See, Sears Roebuck, supra* 421 U.S. at 149, 150–53, 95 S.Ct. 1504; *Kent Corp. v. N.L.R.B., supra* at 617–24.

**15.** *See,* Armstrong's Affidavit, ¶ 7.

of such records would (A) interfere with enforcement proceedings . . . (E) disclose investigative techniques and procedures"

In his affidavit Francis Armstrong says: " 'Firestone also sought records reflecting any determination or guidelines regarding acceptable failure rates for tires tested under Standard 109. Standard 109, like the other Federal motor vehicle safety standards, is a minimum performance standard. Standard 109 does not permit "acceptable failure rates"; it requires 100% compliance. Thus, in this sense, any test failure is a noncompliance. The Office of Standards Enforcement has, however, developed sampling plans for guidance in controlling workload. The sampling plans are designed to assist the Agency in allocating its resources. They fluctuate with staff number and workload. The sampling plans merely serve as rough indicators of the severity of the problem. Any staff engineer may disregard or depart from the sampling plan when he feels it warranted. The NHTSA has never disclosed its sampling plans because it fears manufacturers may in response readjust their compliance efforts to the less-than-100% pass rate of the sampling plan. A second reason for nondisclosure is that the sampling plan is merely advisory. It does not constitute policy or official action or decision.' In addition, disclosure of past plans would enable the manufacturer to make educated guesses regarding current areas of concentrated testing; he could then for economic reasons relax his vigilance in the production of tires which he thinks will not be tested that year." [16] Armstrong's Affidavit, ¶ 7.

The Court finds that NHTSA has not sustained its burden to establish that revelation of the information in Tabs 8 through 9(g) will interfere with enforcement proceedings because the agency has not shown that any of the information is dated later than 1974. *Compare, Sears Roebuck, supra* 421 U.S. at 162–65, 95 S.Ct. 1504; *See,* 5 U.S.C. § 552(a)(4)(B), § 552(b); Conference Report No. 93–1200, 93rd Cong. 2d Sess. (1974); U.S.Code Cong. and Admin.News, 1974, pp. 6287–88; *Sterling Drug v. F.T.C.,* 146 U.S.App.D.C. 237, 450 F.2d 698, 703 (1971). NHTSA does not indicate exactly how a manufacturer could employ this outdated information to prognosticate current or future tire sampling plans. The Court finds that NHTSA did not establish that revelation of the information contained in Tabs 8 through 9(g) constitutes disclosure of protected "investigative techniques and procedures" within the meaning of § 552(b)(7)(E). The Court views the material in Tabs 8 through 9(g) as "instructions to staff," *see,* § 552(a)(2)(C). The Legislative Conference Report specifically states that § 552(a)(2)(C) information may not be sheltered from disclosure pursuant to the § 552(b)(7)(E) exemption.

"The conferees wish to make clear that the scope of this exception [§ 552(b)(7)(E)] against disclosure of 'investigative techniques and procedures' should not be interpreted to include . . . records falling within the scope of subsection 552(a)(2) of the Freedom of Information law, such as . . . instructions to staff that affect a member of the public." 93rd Cong. 2d Sess. (1974), U.S.Code Cong. and Admin.News, 1974, p. 6291.

Therefore the Court orders the defendants to disclose the material contained in Tabs 8 through 9(g).

■ The fourth category of information which NHTSA seeks to shelter from disclosure under the FOIA consists of memoranda containing non-final recommendations from closed NHTSA investigations of tires other than the Firestone 500. *See,* Tabs 11(a)(1) through 11(d)(4)(q). NHTSA defends its position by saying: [*See,* Armstrong's Affidavit, ¶ 11.]

---

16. NHTSA's contention that the material in Tab 8 is not a policy statement is not credible. The document in Tab 8, on its face, purports to set policy, and NHTSA furnished the Court with no examples in which the instructions set out in the Tab 8 material were not implemented as standard operating procedure.

"A second broad class of (b)(5) records in these twenty-eight case files consists of intra-agency memoranda of advice or recommendations concerning the future course of the investigation. These memoranda either pass within the engineering office or between the engineering and legal offices of NHTSA. The memoranda generally briefly provide the senders' appraisal of the case and suggest the next steps to be taken in the investigation. These memoranda, when sent from the engineering office to the legal office, are usually accompanied by a copy of the case file. The memoranda advise and assist the appropriate decision-makers. They are generally scrutinized by the decision-makers and they are not always followed. Facts contained in these memoranda are frequently inseparably interwoven with the senders' opinion; where the facts were separable, NHTSA has disclosed them. The undisclosed memoranda of this class are opinions, advice, deliberations or recommendations developed to assist in various stages of planning official action. Disclosure of these memoranda would exhibit the candid exchange of ideas, views and opinions vital to the effective conduct of Agency business.

"A third class of undisclosed records in these twenty-eight case files consists of memoranda discussing test results. Raw test data is disclosed but internal memoranda reviewing and appraising test data are withheld. This NHTSA policy of nondisclosure includes review of not only NHTSA's tests but also tests performed by independent contractors. NHTSA withholds these records because the appraisal of pass or fail by an independent contractor or by NHTSA engineers is only advice, opinion or recommendation. The NHTSA Administrator alone may decide whether a noncompliance exists. The distinction in decision-making authority is not merely technical. The

NHTSA staff engineers actively review the conduct and conclusions of tests run by independent laboratories and may reach different conclusions regarding whether a tire passed or failed the test. Similarly, the Administrator or his delegate questions and criticizes the staff engineers' conclusions and may find them in error. These memoranda, then, contain intra-agency opinions, advice, deliberations and recommendations; they do not dictate the final decision. Since the conclusions in these memoranda represent only the views of certain persons which may be modified or overruled prior to the final Agency decision, the Agency does not disclose them. NHTSA has, however, provided to Firestone and the public the separable facts contained in these records. In the interests of free and frank deliberations, however, NHTSA has not disclosed the remainder."

Upon reviewing the documents contained in Tabs 11(a)(1) through 11(d)(4)(q) the Court concludes that NHTSA correctly characterized them as intra-agency advisory opinions, which express non-final recommendations, and are therefore entitled to the protection of Exemption (b)(5).[17] *See, Sears Roebuck, supra* 421 U.S. at 149, 150–53, 95 S.Ct. 1504; *Sterling Drug, supra* 146 U.S.App.D.C. 237, 450 F.2d at 704–05; *Kent Corp., supra* at 617–24; 5 U.S.C. § 552(b)(5). The defendants need not disclose the information contained in Tabs 11(a)(1) through 11(d)(4)(q) of the *in camera* inspection material.

■ The fifth category of documents which NHTSA seeks to shelter from the FOIA are recommendations to and from staff attorneys regarding which documents should be deleted from the public viewing file in several NHTSA investigations. *See,* Armstrong's Affidavit, ¶ 12. These documents are protected from disclosure under the attorney work product, attorney-client, and governmental consultative privileges embodied in Exemption (b)(5). *See,* 5

17. Some of the documents in this category are protected by the attorney-client and attorney work product privileges incorporated into the (b)(5) Exemption. *See,* Tabs 11(c)–11(d)(4)(q).

*See also, Sears Roebuck, supra* 421 U.S. at 149, 154–55, 95 S.Ct. 1504; *Kent Corp., supra* at 622–24.

U.S.C. § 552(b)(5); *Sears Roebuck, supra* 421 U.S. at 149–55, 95 S.Ct. 1504; *Kent Corp., supra* at 617–24. Therefore the defendants need not disclose the material contained in Tabs 12 through 12(n), and Tab 25.

■ The sixth category of material which NHTSA seeks to shelter from disclosure under the FOIA is material which tire manufacturers furnished NHTSA in connection with investigations other than the Firestone 500 Tire investigation. NHTSA represented to the Court that the manufacturer furnished this data after requesting and receiving a guarantee of confidentiality. *See,* Armstrong's Affidavit, ¶ 13.[18] NHTSA charges that information which an agency receives pursuant to a promise of confidentiality is excluded under Exemption (b)(4) which pertinently provides,

> "This section does not apply to matters that are . . . trade secrets and commercial or financial information obtained from a person and privileged or confidential." *See,* 5 U.S.C. § 552(b)(4).[19]

NHTSA properly asserts the (b)(4) Exemption with respect to the information discussed in Armstrong's Affidavit, ¶ 13, because it obtained that data under an express promise that the information would remain confidential, and because the information discussed in ¶ 13 delineates manufacturing data which a corporation would not customarily release to the public. *See,* Senate Report No. 813, 89th Cong. 2d Sess. 9 (1964); H.R.Rep.No.1497, 89th Cong. 2d Sess. 10 (1964); *Cf.,* U.S.Code Cong. and Admin.News, 1974, p. 6291 (discussing "confidential source" in 5 U.S.C. § 552(b)(7)(D); *Sterling Drug Inc. v. F. T. C.,* 146 U.S.App. D.C. 237, 450 F.2d 698, 708–09 (1971). Therefore, the defendants need not disclose the confidential material discussed in Armstrong's Affidavit, ¶ 13.

■ The seventh category of materials which NHTSA seeks to shelter from disclosure under the FOIA are documents relating to pending NHTSA investigations. *See,* Armstrong's Affidavit, ¶¶ 14 through 22. NHTSA argues,

> "With respect to the pending investigations identified among the twenty-eight files, NHTSA has also withheld records by authority to exemption (b)(7) of the FOIA. (Many of these records also fall within the (b)(5) exemption.) The records withheld most frequently consist of plans for and appraisals of the course of the pending investigation. NHTSA has not disclosed these records because disclosure might compromise its law enforcement efficiency. NHTSA discloses most of these materials when the investigation is completed, or substantially completed, at the initial determination stage; but NHTSA fears earlier disclosure of Agency procedures and techniques in pending investigations might result in cumbersome and less productive investigations and possibly even obstruction by the manufacturer. For example, NHTSA may decide to spot check products on the market at certain locations. Forewarned a manufacturer might compromise the integrity of the checking procedure. As another example, NHTSA personnel might respond in various ways to complaints from consumers or dealers. If the manufacturer knows of these complaints prior to NHTSA response, the manufacturer may try to reach and persuade the complainant first, or confiscate the evidence. For these reasons, NHTSA has withheld from Firestone and from the general public documents reflecting [sic] from pending investigative files." [20] Armstrong's Affidavit, ¶ 14.

---

**18.** This information was not produced in the *in camera* inspection materials. *See,* Defendants' *Report to the Court,* fn. 1. The record does not show that this issue has been formally withdrawn.

**19.** 5 U.S.C. § 551(2) includes "corporations" in the definition of the term "person" for pur-

poses of the Administrative Procedure Act of which 5 U.S.C. § 552(b)(4) is a part.

**20.** This information was not included in the *in camera* inspection materials. *See,* Defendants' *Report to the Court,* fn. 1. The record does not show that this issue has been formally withdrawn.

■ The Court is convinced that disclosure of investigatory material *in pending cases*, would "interfere with enforcement proceedings;" *See*, 5 U.S.C. § 552(b)(7)(A); *See, Frankel v. S. E. C.*, 460 F.2d 813, 817 (2nd Cir. 1972), *cert. den.* 409 U.S. 889, 93 S.Ct. 125, 34 L.Ed.2d 146 (1972); *Center for National Policy Review v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370, 372–75 (1974); *Ditlow v. Brinegar*, 161 U.S.App. D.C. 154, 494 F.2d 1073, 1074 (1974), *cert. den.* 419 U.S. 974, 95 S.Ct. 238, 42 L.Ed.2d 188; *Aspin v. Department of Defense*, 160 U.S.App.D.C. 231, 491 F.2d 24, 30 (1973); *Compare*, U.S.Code Cong. and Admin.News, 1974, pp. 6291–92, and therefore denies Firestone's request that such information be disclosed prior to the conclusion of the administrative phase of these pending NHTSA investigations.[21]

■ The eighth category of materials which NHTSA seeks to shelter from disclosure are engineering analyses pertaining to the formulation of FMVSS 109, 110, 117, 119. *See*, Tabs 23(a) through 23(e). NHTSA argues,

"In addition to records appearing in the twenty-eight investigative case files, Firestone also requested records relating to the development of Standard 109, its objectivity, practicability and relationship to motor vehicle safety. These records are available to the public in three libraries, primarily NHTSA's Technical Reference Library, except for a relatively few engineering analyses prepared in connection with dockets relating to Standards 109, 110, 117 and 119. The staff engineers prepared these analyses to assist decision-makers in appraising comments submitted to the docket. These analyses select and briefly classify problems raised and suggestions made about the proposed

standards, then discuss their validity and suggest various alternatives. These analyses used to take the form of a phrase outline; now they are in memorandum form. They consist of and represent the ideas and the opinions of the responsible engineer. The limited factual matter contained in these engineering analyses is inextricably intertwined with the staff engineer's opinion of the merits and all of these facts are otherwise publicly available in the rulemaking docket. NHTSA has refrained from disclosing these analyses because they represent the ideas and opinions of staff members. The document is advisory. The decision-maker considers but does not necessarily adopt these ideas and opinions. In the interests of promoting full intra-agency deliberation and expression, NHTSA has withheld them from public viewing." *See*, Armstrong's Affidavit, ¶ 23.

Examination of these documents reveals that Tabs 23(a), (b), (c), (d) and (e) recite primarily factual matter and competing concerns regarding the promulgation of FMVSS 109, 110, 117, 119, however material in Tab 23(c) also recites staff recommendations. The Court concludes that this material constitutes reasonably described records under 5 U.S.C. § 552(a)(3). NHTSA's affidavits do not specifically state which exemption it invoked with respect to these materials, but the Court infers from Armstrong's Affidavit, ¶ 23, that NHTSA relies upon Exemption (b)(5). *See*, 5 U.S.C. § 552(b)(5). However, because of the factual and analytical nature of most of the data contained in Tabs 23(a), (b), (d), and (e), that material would be routinely discoverable in civil litigation and therefore NHTSA did not carry its burden to establish that *all* of the documents contained in

---

21. When these files become closed, by an administrative decision to either issue a recall order or not to issue such an order, and are therefore no longer related to pending administrative proceedings, Firestone, or a new plaintiff, may bring a subsequent action seeking the disclosure of this information without the bar of *res judicata*. A NHTSA administrative investigation cannot be deemed "pending" for purposes of the (b)(7)(A) Exemption after NHTSA issues a final order which becomes the subject of *de novo judicial* review because the agency is required to complete its investigation prior to issuing a final administrative decision. The Court makes no ruling on the applicability of the (b)(5) Exemption to the material discussed in Armstrong's Affidavit, ¶¶ 14–22, because it finds that this material is currently sheltered by Exemption (b)(7)(a).

Tabs 23(a), (b), (d), (e) are sheltered from disclosure by Exemption 5. *See, Sears Roebuck, supra* 421 U.S. at 149–54, 95 S.Ct. 1504; *Tennessean Newspapers Inc. v. Federal Housing Admin.*, 464 F.2d 657, 660 (6th Cir. 1972); 5 U.S.C. § 552(a)(4)(B), (b)(5). Therefore the Court orders that most of the data contained in Tabs 23(a), (b), (d), (e) must be disclosed. However, some of the material contained within those Tabs relates exclusively to recommendations by staff members. Since these recommendations reflect "agency group thinking," the Court orders that NHTSA need not disclose those portions of Tabs 23(a), (b), (d), (e), which are expressly denominated "recommendations." *See, Sears Roebuck, supra* 421 U.S. at 149–53, 95 S.Ct. 1504; *Kent Corp., supra* at 622–24; 5 U.S.C. § 552(a)(4)(B), § 552(b) (permitting a court to order partial disclosure of agency records). The Court orders disclosure of all the material in Tabs 23(a), (b), (d), (e), except: Tab 23(d), ¶ L, "Recommendations;" Tab 23(e), p. 6, "Recommendations (a), (b)."

However, the material in Tab 23(c) inextricably intertwines factual analysis with staff recommendations and therefore that material would not be routinely discoverable in civil litigation. The Court finds that NHTSA has carried its burden to establish that Exemption 5 applies to those documents. *See, Sears Roebuck, supra*, 421 U.S. at 149–53, 95 S.Ct. 1504; 5 U.S.C. §§ 552(a)(4)(B), (b)(5). Therefore the Court holds that Exemption 5 shelters the material contained in Tab 23(c) from disclosure under the FOIA.[22]

In conclusion, the Court issues an injunction ordering the defendants to produce the following agency records which the Court finds they improperly withheld. [*See,* 5 U.S.C. § 552(a)(4)(B)]:

(1) Tabs 5(a) through 5(c); except that NHTSA need not disclose Tab 5(b), p. 18 (last page of that Tab); Tab 5(c), p. 9, Viewgraph 18.

(2) Tabs 8–9(g).

(3) Tabs 23(a), 23(b), 23(d), 23(e); except that NHTSA need not disclose Tab 23(d), ¶ L, "Recommendations;" Tab 23(e), p. 6, "Recommendations (a)(b)."

The Court further orders that the defendants need not disclose the following documents pursuant to the FOIA:

(1) Tabs 6(a) through 6(d).

(2) Tabs 11(a)(1) through 11(d)(4)(q).

(3) Tabs 12 through 12(n), Tab 25.

(4) Documents discussed in Armstrong's Affidavit, ¶ 13.

(5) Documents discussed in Armstrong's Affidavit, ¶¶ 14 through 22.

(6) Tab 23(c).

The Court does not assess attorneys fees or other litigation costs against the United States, *See,* 5 U.S.C. § 552(a)(4)(E).

## II.

### RULE 34 MOTION IN CASE NO. C76–965

On October 6, 1976 the plaintiff in Case No. C76–965 moved under Fed.R.Civ.P. 34 for an order compelling the defendants to produce the following documents for the plaintiff's inspection:

(1) Memorandum titled "Procedure in Event of Failure in S–109 Testing" dated March 26, 1974 from the Chief of the Verification Division of the Office of Standards Enforcement of the NHTSA to the Director of the Office of Standards Enforcement of the NHTSA.

(2) Memorandum titled "Summary of Failure Determination by Tire Cutting" dated April 3, 1975 from the Director of the Office of Standards Enforcement of the NHTSA to the Assistant Chief Counsel of the NHTSA.

(3) Analyses prepared by NHTSA staff engineers and/or personnel in connection with dockets relating to Fed-

---

**22.** *See*, discussion regarding the Tab 23(c) material in the discovery section of this opinion. The Court denies the defendants' claims based on 5 U.S.C. § 552(b)(2). *See,* Armstrong's Affidavit, ¶ 24.

eral Motor Vehicle Safety Standards 109, 110, 117, and 119 consisting of (a) "Analysis of Comments on Advanced Notice of Proposed Rulemaking on Standard No. 110" dated May 2, 1967.

(b) Analysis consisting of 15 pages, dated May 3, 1967 relating to FMVSS No. 109.

(c) Documents consisting of 26 pages, dated August 10, 1970 relating to FMVSS Nos. 119 and 120.

(d) Documents consisting of 11 pages, dated August 18, 1970 relating to retreaded tires.

(e) Document consisting of 6 pages, undated, pertaining to FMVSS 109, Docket No. 71–10, Notice 2.

(4) Any documents other than those described in Request No. 3 hereinabove which refer to, reflect, relate to or contain any data concerning the correlation, or lack thereof, between the laboratory wheel testing of tires and the road or track performance of tires.

(5) Any documents reflecting or relating in any manner to any instance in which the NHTSA has at any time, other than in the matters from which this action arose, classified any tire as having failed to comply with FMVSS No. 109, where such tire was previously classified as having passed the laboratory tests of FMVSS No. 109 and where such tire was subsequently cut open.

 The first document which the plaintiff seeks to discover under Rule 34 appears at Tab 8 of the material submitted to the Court for an *in camera* inspection in connection with Case No. C75–232A. The Court has already ordered that this infor-

mation be disclosed to the public under the FOIA and therefore the defendants must produce that document for discovery.[23]

 The second document which the plaintiff seeks to discover under Rule 34 appears in the *in camera* inspection material at Tab 6(c).[24] The Court has already held that this document is protected for disclosure under the FOIA by the attorney-client and intra-agency consultative privileges delineated in 5 U.S.C. § 552(b)(5). *See, Sears Roebuck, supra* at 149–54, 95 S.Ct. 1504; *Kent Corp., supra* at 617–24. However, the disclosure requirements of the discovery rules are more rigorous than the disclosure requirements of Exemption 5 of the FOIA. In *Sears Roebuck* the Supreme Court carefully distinguished between the standard for disclosure under the discovery provisions of the Rules of Civil Procedure and the standard for the disclosure of information under the FOIA.

"The ability of a private litigant to override a privilege claim set up by the Government, with respect to an otherwise disclosable document, may itself turn on *the extent of the litigant's need in the context of the facts of his particular case; EPA v. Mink,* 410 U.S., at 86 n. 13, 93 S.Ct. [827], at 835; *Hickman v. Taylor,* 329 U.S. 495, 511–512, 67 S.Ct. 385, 393–394, 91 L.Ed. 451; *Jencks v. United States,* 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103; *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039. However, it is not sensible to construe the Act to require disclosure of any document which would be disclosed in the hypothetical litigation in which the private party's claim is the most compelling. Indeed, the House Report says that Exemption 5 was intended to permit disclo-

**23.** Obviously information which must be disclosed under the routinely discoverable standard employed with respect to the (b)(5) Exemption of the FOIA, *see, Sears Roebuck, supra* 421 U.S. at 149, fn. 16, 95 S.Ct. 1504; *Sterling Drug, supra* 146 U.S.App.D.C. 237, 450 F.2d at 704–05, must also be discoverable pursuant to a motion under Fed.R.Civ.P. 34. Information which the government must disclose to the public generally may not be withheld

from a member of the public who engages the government in litigation.

**24.** This document is titled "Summary of Failure Determination by Tire Cutting." It explains the Office of Standards Enforcements' understanding of past tire cutting practices under FMVSS 109. *See,* discussion in text accompanying footnote 14, *supra.*

sure of those intra-agency memoranda which would *'routinely be disclosed'* in private litigation, H.R.Rep.No.1497, p. 10, and we accept this as the law. *Sterling Drug, Inc. v. FTC,* [146 U.S.App.D.C. 237], 450 F.2d at 704–705." *Sears Roebuck, supra,* 421 U.S. at 149, fn. 16, 95 S.Ct. at 1516 (emphasis added).

The plaintiff's complaint in Case No. C76–965 launches a direct attack on the validity of FMVSS 109 and the practice of cutting tires in order to test their durability. Analytical information in the defendant's exclusive possession which directly relates to the practice of cutting tires in order to assess compliance with FMVSS 109 is crucial to the plaintiff's claim *in this particular* case. The Court must order the defendants to reveal the Memorandum entitled "Procedure in Event of Failure in S–109 Testing" [Tab 6(c)] because the whole document directly relates to the plaintiff's claim, and the plaintiff has no alternative method of obtaining that information. *See, O'Keefe v. Boeing Co.,* 38 F.R.D. 329, 334 (S.D.N.Y. 1965).

■ The third group of documents which the plaintiff seeks to discover under Rule 34 appears in the *in camera* inspection materials at Tabs 23(a) through 23(e). These documents consist of NHTSA analyses of FMVSS 109, 110, 117 and 119. In Case No. C75–232A the Court ordered most of these materials released under the FOIA.[25] However, the Court determined that the material in Tab 23(c) was privileged under 5 U.S.C. § 552(b)(5) because it consisted of intra-agency recommendations

regarding FMVSS 119 which were inextricably intertwined with factual material relating to that safety standard.[26]

■ The Court recognizes that the plaintiff may discover the material contained in Tab 23(c) under Fed.R.Civ.P. 34 if it establishes a particularized need for such material. However, the plaintiff's complaint in Case No. C76–965 is directed solely at the validity of FMVSS 109 and the testing practices conducted thereunder. The plaintiff's complaint makes no claim for relief from administrative decisions based on FMVSS 119. Therefore the Court concludes that the plaintiff failed to sustain its burden to establish a particularized need sufficient to overpower the Government's interest in asserting its privilege to shelter non-final administrative recommendations from disclosure.[27] The Court denies the plaintiff's motion to compel discovery of the document contained in Tab 23(c) of the *in camera* inspection materials.

■ The fourth category of materials which the plaintiff seeks to discover under Rule 34 are documents relating to "data concerning the correlation or lack thereof, between laboratory wheel testing of tires and the road or track performance of tires." *See,* Plaintiff's Rule 34 Motion, p. 2. The Court orders the defendants to reveal this information to the plaintiff to the extent it pertains to laboratory wheel tests conducted pursuant to FMVSS 109.[28] Data dealing with the correlation between laboratory tire tests and road performance under safety standard other than FMVSS 109 need not

---

25. *See,* the discussion of the material contained in Tabs 23(a), (b), (d), (e) in Part I of this opinion, *supra.*

26. This disclosure may be obtained under the discovery rules irrespective of whether it was disclosed under the FOIA. *See, Sears Roebuck, supra* 421 U.S. at 149, fn. 16, 95 S.Ct. 1504.

27. This privilege is the judicially recognized governmental discovery privilege and not the (b)(5) Exemption of the FOIA. *See, Carl Zeiss Stiftung v. E. B. Carl Zeiss Jena,* 40 F.R.D. 318, 324–30 (D.C.1966) (discussion of the relevant factors in balancing the Government's interest in its privilege against a litigant's interest in

discovery); *Boeing Airplane Co. v. Coggeshall,* 108 U.S.App.D.C. 106, 280 F.2d 654, 659–60 (1960); *O'Keefe v. Boeing Co.,* 38 F.R.D. 329, 334 (S.D.N.Y.1965); *Walled Lake Door Co. v. United States,* 31 F.R.D. 258, 260 (E.D.Mich. 1962); *Zacher v. United States,* 227 F.2d 219, 226 (8th Cir. 1955), *cert. den.* 350 U.S. 993, 76 S.Ct. 542, 100 L.Ed. 858 (1956); *Clarke v. Pearson,* 238 F.Supp. 495, 496 (D.C.1965).

28. The two-page memorandum contained at Tab 6(d) is a document in the category which NHTSA must reveal to the plaintiff pursuant to Fed.R.Civ.P. 34.

be disclosed to the plaintiff pursuant to its Rule 34 motion.[29]

■ The fifth category of materials which the plaintiff seeks to discover under Rule 34 consists of documents in which NHTSA classified a tire as "having failed to comply with FMVSS No. 109, where such tire was previously . classified as having passed the laboratory tests of FMVSS 109 and where such tire was subsequently cut open." *See*, Plaintiff's Rule 34 Motion, p. 2. This information is necessary to the plaintiff's claim regarding the invalidity of tire cutting practices under FMVSS 109 and the plaintiff can obtain this data only from the defendants. The Court finds that the plaintiff established its particularized need for discovery of this material and orders the defendants to produce it pursuant to Fed.R. Civ.P. 34.

### III.

### TIME FOR DISCLOSURE OF INFORMATION

On October 6, 1976 the plaintiff moved this Court to expedite the production of documents pursuant to Fed.R.Civ.P. 34(b). The Court denies the motion to expedite as stated by the plaintiff. However, the Court orders the defendants to produce the documents which it must disclose to the plaintiff in the FOIA case [C75–232A] and under the Rule 34 motion in Case No. C76–965 by not later than 2:30 p. m. on Friday, October 22, 1976.

With respect to the Court's decision in Case No. C75–232A this Memorandum is adopted as Finding of Fact and Conclusion of Law under Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.

---

**29.** The enforcement practices under FMVSS provisions other than 109 are not relevant to Firestone's claim and therefore Firestone can-not demonstrate a particularized need for such data sufficient to justify disclosure under the civil discovery rules.